**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JOANNE COGAR,** | ) | **CASE NO 5:11CV1585** |
| | ) | |
| Plaintiff, | ) | **JUDGE BENITA Y. PEARSON** |
| | ) | |
| v. | ) | **MAGISTRATE JUDGE GREG WHITE** |
| | ) | |
| **MICHAEL J. ASTRUE, Commissioner** | ) | |
| **of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |

Plaintiff Joanne Cogar ("Cogar") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying her claim for a Period Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be vacated and the case be remanded for further proceedings consistent with this Report and Recommendation.

**I. Procedural History**

On August 22, 2008, Cogar filed an application for POD, DIB, and SSI alleging a disability onset date of July 17, 2008, and claiming that she was disabled due to asthma and hypertension. (Doc. No. 73-76.) Her application was denied both initially and upon reconsideration. Cogar timely requested an administrative hearing.

On August 11, 2010, an Administrative Law Judge ("ALJ") held a hearing during which Cogar, represented by counsel, testified. Mike Dorval, an impartial vocational expert ("VE"), also testified. On August 13, 2010, the ALJ found Cogar was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision

became the final decision of the Commissioner when the Appeals Council denied further review.

## II. Evidence

*Personal and Vocational Evidence*

Age 50 at the time of her administrative hearing, Cogar is an individual closely approaching advanced age under social security regulations. *See* 20 C.F.R. § 404.1563 & 416.963. (Tr. 19.) Cogar has an eleventh grade education and past relevant work as a manager and assistant manager. *Id*.

*Hearing Testimony*

At the hearing, Cogar testified as follows:

- She lives alone and is able to take care of her personal needs, including cooking and cleaning, but rarely goes shopping without assistance from her father. (Tr. 35-36.)

- She has a driver's license, but does not own a car. (Tr. 36.)

- She enjoyed her job as a bill collector at a jewelry store, but was terminated after missing work when she experienced heart attack symptoms and had a difficult time staying awake while at work. (Tr. 36-38, 44.) She was diagnosed with sleep apnea. (Tr. 38) She uses a continuous positive airway pressure ("CPAP") machine, which helps her sleep. *Id.*

- She has only one working vocal cord, causing her voice to fluctuate. (Tr. 39.)

- She does not believe that she can return to work because of her breathing problems and depression. (Tr. 39, 48-49.)

- Activities such as cleaning, walking at a fast pace, and walking while talking cause her to experience shortness of breath. (Tr. 60-61.)

- She stopped smoking seven years ago. (Tr. 40.)

- At most, she can use her inhalers two times per day. (Tr. 60.) If they do not work, she calls the rescue squad. *Id*.

- She has been hospitalized about every three months for breathing problems. (Tr. 48-49.)

- She was terminated from jobs due to her breathing problems, not because of depression. (Tr. 52.)

## III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason

2

of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Cogar was insured on her alleged disability onset date, July 17, 2008, and remained insured through the date of the ALJ's decision, August 13, 2010. (Tr. 10, 21.) Therefore, in order to be entitled to POD and DIB, Cogar must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Cogar established medically determinable, severe impairments due to

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

"right vocal cord paralysis, degenerative disc disease of the cervical spine, asthma/chronic obstructive pulmonary disease, depression, [and] obesity." The ALJ also found Cogar to have non-severe impairments of diabetes and sleep apnea. Her impairments, however, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Cogar was found incapable of performing her past work activities, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Cogar is not disabled.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

### VI. Analysis

Cogar contends that the ALJ did not follow Social Security Ruling ("S.S.R.") 02-1p, in evaluating obesity. (Doc. No. 12 at 16-20.) The Commissioner asserts that the ALJ properly limited Cogar to a sit/stand option based upon state agency opinions showing her body mass index ("BMI") to be in the obese range. (Doc. No. 12 at 11-15.)

Although the Social Security Rules no longer contain a separate listing for obesity, *see Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643-644 (6th Cir. 2006), the listings contain the following mandate:

> . . . when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claimant at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, **adjudicator's must consider any additional and cumulative effects of obesity**." Listing 1.00Q (emphasis added), 20 C.F.R. Part 404, Subpart P, Appendix 1. Moreover, the Regulations "require the agency to consider the combined effect of all of the claimant's ailments, regardless of whether any such impairment, if considered separately, would be of sufficient severity." *Clifford v. Apfel,* 227 F.3d 863, 873 (7th Cir. 2000).

*Besecker v. Astrue*, 2008 WL 4000911, *5 (S.D. Ohio Aug. 29, 2008).

S.S.R. 02-1p reinforces the Regulations' mandate regarding obesity, in pertinent part, as follows:

> Obesity is a risk factor that increases an individual's chances of developing impairments in most body systems.[2] It commonly leads to, and often complicates,

---

[2]To classify overweight and obesity in adults, the National Institute of Health relies on an individual's BMI. In adults, a BMI of 25-29.9 is regarded as overweight and a BMI of 30.0 or

5

> chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems. Obesity increases the risk of developing impairments such as type II (so-called adult onset) diabetes mellitus--even in children; gall bladder disease; hypertension; heart disease; peripheral vascular disease; dyslipidemia (abnormal levels of fatty substances in the blood); stroke; osteoarthritis; and sleep apnea. It is associated with endometrial, breast, prostate, and colon cancers, and other physical impairments. Obesity may also cause or contribute to mental impairments such as depression. The effects of obesity may be subtle, such as the loss of mental clarity or slowed reactions that may result from obesity-related sleep apnea.

S.S.R. 02-1p at *3. In addition, because there is no listing for obesity, the Ruling mandates that at step three of the disability analysis:

> . . . . we will find that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing. For example, obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, including mental disorders.
>
> * * *
>
> We will also find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment. For example, obesity affects the cardiovascular and respiratory systems because of the increased workload the additional body mass places on these systems. Obesity makes it harder for the chest and lungs to expand. This means that the respiratory system must work harder to provide needed oxygen. This in turn makes the heart work harder to pump blood to carry oxygen to the body. Because the body is working harder at rest, its ability to perform additional work is less than would otherwise be expected. Thus, we may find that the combination of a pulmonary or cardiovascular impairment and obesity has signs, symptoms, and laboratory findings that are of equal medical significance to one of the respiratory or cardiovascular listings.

---

above as "obesity." S.S.R. 02-1p at *2. Further, the Ruling does not provide precise height and weight requirements for obesity. Instead it states that the existence of obesity is established by:

> generally rely[ing] on the judgment of a physician who has examined the claimant and reported his or her appearance and build, as well as weight and height. Thus in the absence of evidence to the contrary in the case record, we will accept a diagnosis of obesity given by a treating source or consultative examiner.

S.S.R. 02-1P at *3.

S.S.R. 02-1p at *5.

S.S.R. 02-1p further recognizes that a claimant's obesity could affect her exertional limitations and must be considered at steps four and five as follows:

> Obesity can cause limitations of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the external functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.
>
> The effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea. This can lead to drowsiness and lack of mental clarity during the day. Obesity may also affect an individual's social functioning.
>
> An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. As explained in SSR 96-8p ("Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims"), our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. [footnote omitted] In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea.
>
> The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.

S.S.R. 02-01p at *6; *see also Besecker v. Astrue*, 2008 WL 4000911, at *5-6 (S.D. Ohio Aug. 29, 2008) ("repeated references to Plaintiff's obesity in the record, including the opinions of several medical sources, should have alerted the ALJ to consider Plaintiff's obesity and its combined impact with his other impairments at Steps 2, 3 and 4 of the sequential evaluation."). The Ruling also cautions: "[h]owever, we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record." S.S.R. 02-1p at *6.

In *Bledsoe v. Barnhart*, 165 Fed Appx. 408, 412 (6th Cir. 2006), the Sixth Circuit called it

7

"a mischaracterization to suggest that Social Security R[egulation] 02-1p offers any particular procedural mode of analysis for obese disability claimants." The ruling "does not mandate for a particular mode of analysis. It only states that obesity, in combination with other impairments, 'may' increase the severity of the other limitations." *Id.* at 411-12. Yet, the ALJ must still "consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Negat v. Comm'r of Soc. Sec.*, 2009 WL 4981686, *3 (6th Cir. Tenn. Dec. 22, 2009) (*citing Bledsoe*, 165 Fed. App'x at 411-12.) Put simply, this is more than a requirement that the ALJ mention the fact of obesity in passing: "courts . . . remand[] even for a mere failure to consider obesity." *Macaulay v. Astrue*, 262 F.R.D. 381, 390 (D. Vt. 2009) (citations omitted); *see also Johnson v. Astrue*, Case No. 08-3658, 2010 WL 148411, *18 (S.D. Tex. Jan. 11, 2010) ("[T]he ALJ should develop the record on the issue of [the claimant's] obesity and how her obesity impacted her ability to function and work. . . ."); *Priestly v. Astrue*, 2009 WL 1457152, *13-14, Case No 6:08-546 (D.S.C. May 22, 2009) ("while the ALJ stated he considered the plaintiff's obesity when determining her RFC, he failed to provide any explanation as to how this severe impairment factored into his assessment.")

The Sixth Circuit, however, rejected an argument by a claimant who asserted that because her doctors' reports indicated her to be obese, the ALJ was required to consider obesity as a possible impairment. *Cranfield v. Soc. Sec. Admin.*, 79 Fed. App'x 852, 857 (6th Cir. 2003). In *Cranfield*, the plaintiff provided no evidence that her obesity affected her ability to work. The *Cranfield* Court relied on 20 C.F.R. § 404.1512(a) as requiring a plaintiff to "furnish medical and other evidence that [the SSA] can use to reach conclusions about [her] medical impairment(s) and ... its effect on [her] ability to work on a sustained basis." *See* 20 C.F.R. § 404.1512(a); *see also Essary v. Soc. Sec. Admin.*, 114 Fed.Appx. 662, 667 (6th Cir. 2004). The Court found that Cranfield did not satisfy this requirement with respect to an obesity claim, and, therefore concluded that the ALJ had no obligation to address her obesity. *Id.* at 857.

Another federal court in the Sixth Circuit held that obesity and its effects must be given full analysis by the ALJ when considering limitations in calculating a claimant's RFC. *See Rojas v. Astrue*, Case No. 1:07-cv-1035, 2009 WL 465768 (W.D. Mich. Feb. 24, 2009). The

8

*Rojas* Court concluded that the ALJ, even though he may not have ignored the evidence and expert opinion tending to support the plaintiff's claim of disability partially caused by obesity, the ALJ, based on S.S.R. 02-1p, accorded such evidence "legally-insufficient attention." *Id.*

Here, during the relevant time period, the record reflects that Cogar was sixty two inches tall, weighing between 256 to 289 pounds, with a BMI of approximately 50.[3] (Tr. 430, 611, 632, 787.) The ALJ found severe impairments of obesity, depression, asthma/chronic obstructive pulmonary disease, degenerative disc disease and right vocal cord paralysis. He briefly mentioned her obesity in the summary of the medical evidence. (Tr. 13-15.) He addressed her obesity in calculating the RFC, limiting her to a sit/stand option, indicating in a footnote that "the effects of the claimant's respiratory impairments and obesity" limited her vocational capacity.[4] (Tr. 18.) However, the ALJ did not discuss Cogar's depression, which he should have considered in combination with her obesity. *See* S.S.R. 02-01p at *3 (recognizing that obesity may cause or contribute to the severity of depression). The ALJ found Cogar to have moderate difficulties with regards to concentration, persistence or pace based upon her depressive disorder and adjustment disorder. (Tr. 18.) As such, he found her mental impairment to be severe, but in discussing her credibility, noted that "her mental impairment is only barely severe, and imposes very little in the way of limitation on her vocational capacity." (Tr. 16.)

---

[3]In July, 2008, Cogar's BMI was 52.2. (Tr. 430.)

[4]The ALJ formulated the RFC as follows:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she would require a sit/stand option whose duration and frequency of postural changes was at her discretion,[fn 43]she could not be exposed to extremes of temperature, or to respiratory irritants, and the job she performed would need to be no more than semi-skilled to account for concentration deficits due to a depressive disorder.

> [fn 43] This limitation is to account for the effects of the claimant's respiratory impairments and obesity on her vocational capacity.

(Tr. 18.)

9

"[A court] cannot uphold a decision by an administrative agency ... if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). The ALJ's analysis is inconsistent in that he found her to have a severe impairment of depression based upon her moderate difficulties in concentration, but then concluded her mental impairment was "only barely severe" with little analysis. In addition, the ALJ did not consider her obesity in combination with depression. The Court is unable to trace the path of the ALJ's reasoning as his underlying analysis was insufficient under the Administration's procedural rules.

The medical evidence demonstrates that Cogar suffers from asthma, sleep apnea, and depression, all limitations that could be complicated by obesity. These conditions, along with obesity, could affect a claimant's ability to function effectively in the workplace at a level that results in disability. Pursuant to 20 C.F.R. §§ 404.1545 & 416.945, the ALJ was responsible to determine the RFC based upon all the evidence and impairments in the record, but neglected to do so.

Accordingly, a "sentence four" remand pursuant to 42 U.S.C. § 405(g) is appropriate to permit the Commissioner to clearly articulate justification for the conclusion. Having recommended remand on the obesity issue, the Court need not consider Cogar's argument regarding her mental impairment.

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Cogar can be awarded benefits only if proof of disability is "compelling." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits only if all essential factual issues have been resolved and proof of disability is compelling). When the ALJ misapplies the regulations or when there is not substantial evidence to support one of the ALJ's factual findings and his decision therefore must be reversed, the appropriate remedy is not to award benefits. The Court,

therefore, recommends the case be remanded under "sentence four" of 42 U.S.C. § 405(g).[5]

### VII. Decision

For the foregoing reasons, it is recommended that the decision of the Commissioner be vacated and the case be remanded pursuant to 42 U.S.C. § 405(g) sentence four for further proceedings consistent with this Report and Recommendation.

s/ Greg White
United States Magistrate Judge

Date: May 25, 2012

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**

---

[5] Under sentence four of 42 U.S.C. § 405(g), the district court has the authority to reverse, modify, or affirm the decision of the Commissioner. This may include a remand of the case back to the Commissioner for further analysis and a new decision. A sentence four remand is a final judgment. *See Melkonyan v. Sullivan*, 501 U.S. 89, 97-102, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991).